When you're ready, counsel. May it please the court, my name is Carrie McConaghy-Harris with the Law Offices of David Michael Cantor in Tempe, Arizona, and I represent the prisoner appellant, Rodney Belvado, who is in federal custody and not present today. I'll attempt to reserve a couple moments for rebuttal. There are three major errors in this case, any one of which requires reversal. First, the district court clearly erred when it failed to acknowledge or discuss the proper standard for the waiver, the voluntariness of the waiver of the Miranda rights. Second, it clearly abused its discretion when it precluded the testimony of Dr. Susan Parrish on expert testimony of interrogative suggestibility of the defendant. And third, it erred when it found that there was sufficient corroboration for the confession to support the conviction in this case. First, the district court erred by failing to suppress Mr. Belvado's confession. The error resulted from the district court's complete failure to address the requisite analysis for the separate Miranda voluntariness waiver issue. Contrary to the government's assertion and its answer, the district court didn't just fail to give a detailed analysis in its order. It specifically addressed only the voluntariness of the statements themselves. Can we stop right there just a second? Maybe you can help me. I'm looking at the district court's decision, which would be the order, and it was entered on June 2nd of 2006. On the ninth page of the order, the court finally sums up and said, after considering all the facts and all the discussions, the court has considered the following factors in reaching its findings, that the statement made by a defendant on December 12, 2004, were voluntary and there was no coercive conduct. And he then lists ten items. None of those relate to the fact that it has to make a knowing waiver. The next separate paragraph, not numbered, not under the heading, is he talks about during the suppression hearing, defendants counsel called Susan Parrish, a psychologist, to testify concerning her evaluation of the defendant on April 12, 2005, and at Perrin, her written report is dated April 25, 2005, and her opinion with respect to susceptibility, the court finds that Dr. Parrish's testimony does not provide a basis for suppressing defendants' voluntary statements. Now, that's not very detailed, but it does elicit the fact that he had a hearing. Susan Parrish was right in front of him. Defense counsel called the witness. They discussed her opinion with respect to susceptibility. Isn't that the exact issue you're raising relative to knowing portion of the waiver? No, it's not. In fact, because earlier in the order, the court specifically says, I'm considering the motion to suppress within the context of U.S. v. Haswood, which is the voluntariness, which is the specific voluntariness of the confession itself, not the voluntariness of any Miranda waiver. The court specifies that, talks about how it in particular was reversed in that case, and what the appropriate analysis is, which is the course of conduct of the authorities, whether it's physical or psychological, and then it goes on to list out all of the facts that were presented at the suppression hearing. But regardless of which facts the court cites to, including the doctor's expert testimony, it can't ‑‑ it has to be error when the court applies the wrong legal analysis to it, or not the wrong, but fails to do the separate second analysis of the Miranda rights inquiry. The analysis that it conducted was the voluntariness of the statements themselves. It simply did not even consider, so it could not apply those facts to the test for the waiver of the Miranda rights. Go ahead. Couldn't the court have entered an order that just said, motion denied? Well, if the court had done that, then I suppose there would be a presumption that the court knows the law and applied the applicable legal test. Why don't we presume the court knows the law, discussed the item that he thought was most in dispute or most important, but simply denied the motion, and whatever was contained in the motion, he says, nope, that's not going to do it. But here he didn't do that, and what he did do was explicitly state not the wrong, but that he did not include the appropriate analysis. So there's no reason to give him the deference. My hypothetical, he doesn't include the appropriate analysis either. He says motion denied, and that's enough. And in this case, it concludes it is order denying defendant's motion to suppress. I infer from that whatever is in the motion to suppress hasn't persuaded him. Motion denied. Right. I mean, I don't know that you can assume, because he chooses to talk about A, that he hasn't given any consideration to B. But he gives the detailed analysis that indicates this is the law that I'm applying. We write dispositions all the time that talk about this issue because it seems to us that's the one that's really in dispute. And occasionally we even add the sentence, we've considered the other issues, none of them warrant discussion. But sometimes we just stop. And if the judge doesn't have a specific obligation to articulate reasons for denying each of the arguments, then I don't know that you can fairly infer the fact that he chooses to talk about one and not about the other means that he closed his eyes to the other. Particularly since some of the factors he considered are exactly the factors you would consider in the context of the other argument, knowing. He cites that the agents thought that the defendant responded appropriately. He cites that the defendant graduated from a particular high school. Those are all factors that you would consider on the issue of whether or not the defendant knowingly waived his rights. How can we assume that he closed his eyes to the issue? Well, I would simply assert that because he was so detailed otherwise, that that indicates that he did close his eyes to the issue. But to the extent if you believe that he did not, then our other aspect of the argument that is also he failed to properly consider or that it was an error in judgment when he determined that these facts did not support both the voluntariness of the waiver and also the voluntariness of the statements themselves. I'm reading the beginning part of the order to which you referred us. I'm now at the bottom of page two. Motion to suppress, underlined. He writes, Ninth Circuit had occasion in the United States versus Haswood to set forth legal principles to be considered in resolving a suppression motion. Then he quotes fairly lengthy excerpts from Haswood, all of them going to voluntariness, none of them going to knowing. All of them are voluntariness. And then he finishes up with these ten factors. The court has considered the following factors in reach against finding that the statements that were made by defendant were voluntary and there was no coercive conduct. The last paragraph, or almost last paragraph, the court finds Dr. Parrish's testimony does not provide a basis for suppressing defendant's voluntary statements. So we have a ten-page order addressing itself exclusively to the question of voluntariness. Right. The standard is voluntary and knowing. It's just not addressed. Now, he might have had it in mind, but he doesn't address it. Well, and if he had it in mind as well, because it's more in-depth, the analysis has to include that he comprehended the rights that he was waiving. In this detailed analysis, how much do you include that? Are you asking for a remand so that the district judge can address the knowingness and the knowingly factor? No. Well, in this particular, the judge could. We are asking for a reversal because this is error. It's failure to acknowledge this constitutional problem of his waiver of Miranda rights. But this is on direct appeal. This is to say we're not dealing with some habeas case where we can't remand. The district judge is there, available to be asked. Yes. Okay. That would be an option. It looks as though you omitted the step. Would you please give us your analysis as to knowingly so that we don't have to do it ourselves based upon a cold record? I mean, you've seen the people. You da-da-da-da-da. Yes. That would be an option that this court has. I would agree. We would also assert that the voluntariness of the statement itself, again, there's a problem with that in particular with the amount of weight that the judge gave or with the discussion that was even offered at the suppression hearing concerning Agent Belvado being in the room during the confession and then also afterwards when Mr. Belvado was writing his written confession and the agent was with him for approximately up to 15 minutes alone, that that is a problem that contributed to the lack of voluntariness of the statements themselves. Well, you know, given how careful he is about voluntariness and how slender the evidence is that the relationship, apparently quite distant, maybe he even didn't remember him at all having met him once or whatever. Sure. And recognizing, yes, that that is a harder standard for us because obviously he did consider the voluntariness of the statements themselves. That's pretty clear. In considerable detail. Yes. Yes. If you have any other questions on that one, I'll move on to the preclusion of the expert testimony, if you would like. First of all, it's important to clear up the record in this. Contrary to the government assertions repeatedly in the answering brief at pages 25, 27 and 29 that Dr. Parrish was going to be, quote, opining that the confession was false or that Mr. Belvado's statement was a product of suggestion by agents and therefore false, Dr. Parrish was not going to testify to that at all. In fact, she explicitly stated, and that is obviously part of the record from the suppression hearing, her entire report, and it's lengthily discussed in ER 8 when her testimony was going to come in at trial where they talked about exactly what she would testify to, and it did not include anything on his specific, whether the confession was suggested to him in this case. Instead, what she was going to testify to was his susceptibility to an erogative suggestion, which is clearly an appropriate area for them to go into and was needed here because that's what the whole defense was based on in this case. Assuming that the confession is properly admitted for purposes of my question so that you don't have a cumulative error problem, wasn't his susceptibility brought out by other evidence? I'm trying to get out of the question there. Even if error, whether this was harmless? No, absolutely not. She was completely precluded from testifying to his susceptibility to interrogative suggestion. No, I'm not asking that question. Was there other evidence presented to the jury at trial that told the jury or invited the jury to consider that he was susceptible? No, there was no other evidence that could have been presented on that. She was the person who had the expert testimony to give them the framework to decide that question. Now, maybe you're going to qualify. She's the only person giving expert testimony. Was there other testimony that he was suggestible? I don't believe so. I wasn't the trial attorney on this, but I'm pretty sure that there was no other, and Mr. Altman can correct me if I'm wrong on that, but I believe that this was the only testimony concerning his suggestibility. And the trial court specifically repeatedly refused to allow it in. The court precluded any discussion of the Gudjohnson's suggestibility analysis, and that's in the excerpts of Record at Eight from the August 18th trial date. Did I miss something? She did testify, though, at trial. She testified to other aspects of her mental evaluation of him. Yeah, and about her examination. But when it came to susceptibility, had she already testified about the fact that he was somewhat retarded? Yes. But she was not allowed to say, and therefore. Yes. Well, no, what it was, it's a separate, it's actually a separate analysis, and I may not be explaining it as well as I could, but there's various aspects of his mental capabilities, and she had separate tests on each one of those, so that he was moderately brain damaged, moderately impaired, his vocabulary and his comprehension skills, those types of things, and those are all separate tests and separate analyses. And then the suggestibility test was a completely separate one, yes, and it had a different method, different testing procedure. She explained the background of it all, and, yeah, was not allowed to go into it at all for this defendant. And obviously that was the issue in this case that was important to the defense. It was not an ultimate issue in the case. The ultimate issues were obviously whether or not the elements of the crime were met, and her testimony would not go to one of those elements. Her testimony would go to whether or not the confession in this case, whether there was the chance that he, because of his mental characteristics, that he was susceptible to suggestion from the agents. And in light of the other problems with the confession, and in particular the fact that the agents in this case admitted in the suppression hearing, I believe, Agent Belvado or Agent Moran at trial as well said, yes, we were the ones who initially would say the details of the crime and before he confessed to them. So the agents even acknowledged that, yes, we did give him those details of the crime and he fed them back to us, recognizing that. So even separate and apart from whether or not his confession was voluntary or whatever, there was clearly this issue concerning the suggestibility. And when the expert was not allowed to testify to that, the jury did not have the framework so that they could conclude whether or not, what kind of weight to give to his confession in the final analysis. So no matter what, basically the cases say, and there's a long list of them, and it's Morales all out of this court as well, Morales and Finley, Vallejo, Rahm or Ram, R-A-H-M, they all say that this type of evidence comes in. It is not on an ultimate issue because it's not telling the jury he didn't have the mens rea for the crime. What it's telling them is he was susceptible to this type of suggestion and so you need to use that to analyze whether or not he committed this crime, whether or not his confession was suggested to him, how much weight to give to that confession. And that was clearly an abuse of discretion for the trial court to fail to allow Dr. Parrish to testify to that. If there aren't any other questions on that one, I'll move on to the failure of the trial court to grant the motion to dismiss pursuant to Federal Rule of Criminal Procedure 29. The government must show not only that there is criminal conduct at the core of the offense that occurred, which we do not contest here, obviously, but it also has to show that the admissions, by virtue, unless they are by virtue of special circumstances inherently reliable, that there is corroboration to establish that they are trustworthy. And here the facts are lacking in that corroboration. The government asserts in its answer that it introduced sufficient eyewitness and physical evidence to connect Rodney to the crime, but such is actually not the case. First of all, the confession was not inherently reliable, again, as I asserted. And as the agent admitted, the confession was largely fed to the defendant in that there were no details that he came up with that they hadn't already asserted to him. So apart from any other problems with the confession, it can't be seen as inherently reliable because he was told the circumstances of the crime. Didn't he have different circumstances in his written statement? It seems to me that when he talked to the officers, he indicated he had hit the victim with a wooden pole. Yes, that was added. And then when he hand wrote the confession, he said he hit him with a metal pole. He was hit with both, actually. And what it was was a metal pole. I understand that, but when you say that he was fed it, he actually put down different things in his handwritten statement. So he obviously was doing his own thing at that time. Nobody fed him the thing that when you do your handwritten statement, make sure you put down he hit him with a metal pole. Well, actually they did because in his oral, in the oral, there's the transcripts of the complete transcripts of the confession are included in the record, I believe. And in the discussion, it establishes not only for each thing as it goes along. They say, did you push him over? No. Did you push him over? No. Maybe you pushed him over. Yeah, okay, yes, I pushed him over. Did you do this? Did you do this? And they went through the elements of each different part of the crime. They said, did you hit him with a log? No, I didn't. We have someone who said they saw you hit him with a log. Okay, yes, I hit him with a log. Did you hit him with a metal pole as well? Because there was an indication that he was hit with this log and with the pole. And the defendant denied using the metal pole throughout the oral confession. In the written confession, he added that he had used the metal pole. But that, again, was only after the agents had suggested that repeatedly in the oral interview with him. So, again, it was not something that he came up with on his own. It was something that they initialized, they said first, and then he said it back to them. Also, the physical, again, that's the physical details of the crime can't be the corroboration, because, again, those are things that were told to him during the confession that he said back. So whether or not there's any other problem with the confession, he didn't come up with these facts on his own. So that simply cannot be what the corroboration is. Aside from that, the only thing the government really has is the testimony of Kendrick Rope, who allegedly witnessed Mr. Belbato kicking something by the fire. And I would simply ask the court to review the record, and it is quite clear that Mr. Rope was not only hesitant to identify Mr. Belbato, but honestly really did not identify Mr. Belbato. In fact, he repeatedly asserted that he could not identify Rodney as the person he saw by the fire that night. It was too far away, it was too dark, he was too drunk, and he did not have his glasses on. He said that over and over again in the face of the government, repeated questioning and trying to get him to assert that Mr. Belbato was the person he saw that night. And later, the only time he even hesitantly identified Mr. Belbato was when he discussed the man who rode home with him in the vehicle, in the back of the truck, after the body was discovered, and the owner of the home said, everybody leave. So all these people jumped in the back of the truck. And Mr. Rope said, you know, I think maybe someone, you know, that looked like him was in the back of the truck. And they said, do you see him in the courtroom today? Well, I don't know. And then finally he said, look around. And he said, well, maybe that guy over there. And they said, can it show that he identified the defendant? And the court said the record will show what it shows, because he did not really. You've got a minute left. Why don't we hear from the other side, and then we'll give you a chance to respond. Thank you. Good morning. May it please the court. My name is Curt Altman. I represent the United States, as I did as trial counsel below. I'll address the issues in this case in the same order that appellant addressed them. First of all, I would agree with this court in one of the questions when the court asked, in the motion to suppress, could the district court's order have been motion denied? I submit to you it could have. And that would have been sufficient. And the argument that appellant makes here that the knowing, essentially it comes down to the knowing and intelligent finding, knowing and intelligent waiver by the defendant. I'm sorry, that's not the test. It's knowing and voluntary. Knowing and voluntary. What I was trying to say, Your Honor, is that in the court's order, I believe the appellant says that there's no indication that the court addressed the knowing factor. And the court was brief, as was pointed out, the district court was brief, but did address Dr. Parrish's testimony and said that her testimony was not, and I'm paraphrasing, was not sufficient or was insufficient to use to suppress a voluntary statement. Now, let's stop right there for a second so that I can get on track. Assume that we know that we don't have an order saying denied. We have an order now that says a lot of things, and it's argued that it does not have any analysis or mention of the knowing element of this waiver. Okay? Now, what standard of review do we use? Are we on a de novo review of what the judge did? Judge, I believe the standard of review for the actual order from the judge is de novo, but the fact-finding standard is clearly erroneous. And this court needs to look at the facts found by the district court. No, but he didn't find any. I'm going from the assumption, unless you can show me differently, that he didn't make any factual finding on the knowing. So do we go back and make a factual finding on knowing? I mean, we're assuming that, like, it's suggested that we have an order saying denied, and it's either in the order or it's, like, denied, it's not there. So if it's not there, it's an analysis. What do we do in our analysis on review? Well, Judge, I think, first of all, that he did make a factual finding, as brief as it was, that her testimony was not sufficient. But if this court were to do it. No, I know. I brought that up. But I didn't find the word knowing. And throughout the whole opinion, as has been discussed before, it was voluntary. So how do we translate that one paragraph into a factual finding on knowing? I mean, I know what he said. You know what he said. But where is it on a translation that he's now interpreted that there was a knowing waiver of Miranda? Judge, I think this court can look at it, DeNova, and go back to the record, and I would turn the court's attention to SCR page 109 and SCR 130 through 131, where the district court specifically, during the voluntariness hearing, addressed with the witness, Dr. Parrish, the defendant's, her opinion as to the defendant's understanding of the Miranda warnings. And in that exchange. What specifically are you referring to on those pages? SCR 109 and SCR 130 to 131. The court is actually questioning. Okay. I'll read along with you. The court is actually questioning Dr. Parrish. I may have the SCR wrong. I'm sorry, SCR 187, Your Honors. This is the court, Dr. Parrish's. Hang on a second. I'm now on SCR 187. Okay. SCR 187. What line are you on? Suppression. What line are you on? Line five. I'm sorry, line three. The court asked Dr. Parrish, well, did he say the word Miranda? I'm sorry, I'm not on the same page with you. You're reading now from 131. 131 at the top of the page, actually SCR 187. That's the bottom right-hand side, and I'm looking at Pelley's SCR, okay, and you're on line three? Line three, that's correct. My line three says court. Well, he said the word Miranda. You didn't? Correct. That's where I am, Your Honor. The court is addressing Dr. Parrish, and he says, well, he said the word Miranda. You didn't? And the witness, who is Dr. Parrish, goes on and says, he said the word Miranda. I didn't. The court asks. And he said that means you should keep your mouth shut. The witness, Dr. Parrish, says it means you should remain calm, and she's quoting the defendant at this point. It means you should not say something because it would be more charges piled on top, like harassment, And the court says, interrupts and says, right. And the witness says, yes. And he understood that, the court asks. The witness says, I don't believe he understood the right to remain silent. The court goes on to say, but he gave you the answer you just said, right, and she agrees. And the court goes on to say, well, the witness says, he gave me answers that indicated he didn't understand the right to remain silent. It was to protect him, and the court says, well, he said to keep quiet, otherwise you'd get in trouble. What do you think that means, seriously? That's the court's response. So the court did address with, through his questioning with Dr. Parrish, the defendant's knowing waiver. Well, what that shows is we have evidence in the record from which a fact finder could conclude that it was not knowing. Correct. But we don't have anything in the record that tells us that the judge did so conclude. The judge concluded that it was knowing. No, the judge concluded that it was voluntary. It says nothing about whether it's knowing. The judge denied the motion to suppress. Correct. That was based on voluntariness and an unknowing waiver, basically. Well, I read the judge's order, and it's a long order. It starts out with the question, is this voluntary? It finishes with the conclusion that this is voluntary, and nowhere in the judge's order does he say it was knowing. And you could say, well, it's necessarily implicit given that he denied, but of course that's true. But given the extensive discussion of voluntary and no mention whatsoever of the other prong, which is knowing, I have to conclude he didn't focus on the question. Judge, again, I do think the record bears that he did focus on it and that it is implicit. Did he focus on it in his decision? I think it was focused on, Your Honor, from the record in arriving his decision. Does the order indicate a clear finding of his knowing analysis? It does not. It indicates nothing whatsoever except for the last word, which is denied. And I think if this court reviewed the record, DeNovo, it would find that the court found, based on his question, that Dr. Parrish's testimony on that issue of knowing and the defendant's lack of knowledge when he waived his Miranda rights lacked credibility. And I think the court's order just didn't come out and say that Dr. Parrish lacked credibility. And the reason I say that is the court himself reviewed the audiotapes of the confession and reviewed the written statement. During the suppression hearing, that was addressed with Dr. Parrish, and Dr. Parrish said she had reviewed the audiotapes. She indicated in her testimony in suppression that she believed it wasn't knowing and it was coerced because the agents yelled at the agents. Yeah, but then you just slid into knowing and that it was coerced. Coerced goes to voluntariness. Knowing goes to did he understand it. I agree, Judge. What I'm trying to focus the court on is the district court's finding that Dr. Parrish lacked credibility. Where do you have a finding by the district court that she lacked credibility? He doesn't say those words. Well, then why did you say that he has that finding? I think it's implicit because the district court listened to it. And where is it implicit? The district court listened to the tape. So did Dr. Parrish. Dr. Parrish indicated that in the tape the agents were yelling at the defendant. When you review the tape, the audio recording, that is simply not the case. So, therefore, the district court listened to it. There's no yelling. The witness that they proffered by the defense says there is yelling. Clearly, that's not accurate. Either she was mistaken or she lacks credibility. And you say that he found that she lacked credibility without pointing me to any finding. I'm saying that her testimony as to the knowing waiver lacked credibility. And the district court simply putting that it was insufficient, her testimony, to suppress a voluntary statement shows that he believed. Your language keeps wandering. He didn't say insufficient to suppress a voluntary statement. He said. Judge, I could read to you exactly what he said from page 10 of his order, which is that. I can read it to you, too. He says the court finds Dr. Parrish's testimony does not provide a basis for suppressing a defendant's voluntary statement. Correct. Judge, what I think can be established in this case, too, and the appellant relies on a couple cases in their reply brief that I think are important, I would urge this court to look at the Aikens case, which is a district court case that's not binding on this court out of the D.C. a statement because the defendant did not understand his Miranda waivers, and they rely on that. The appellant relies on that in their reply. It's easily distinguished from this case and should be focused on because in that case, unlike this case, the defendant actually took the stand in the suppression hearing. And through some questioning by the court, the defendant actually read or attempted to read the Miranda warnings that he signed and that he. Well, what makes me uncomfortable about this case is that there's evidence in the record from which a reasonable fact finder could find that the waiver was knowing, but there's also evidence in the record from which a reasonable fact finder could find it that is not knowing. And I'm very reluctant in the absence of any specific finding by the district judge on that point to reverse, but I'm also reluctant, absent any specific finding when he was so specific as to voluntary, to affirm. I prefer to ask the district judge. And, Judge, I think you can do that. I do think that it doesn't require a remand for the district judge to clarify, but certainly reversal, if the court does take that position, is not the answer in this case. Simply a remand to the district court to make more specific findings on to why this court did or did not find it to be a knowing waiver would suffice. And I think, certainly I cannot speak for the district court, but I think what the district court would indicate in that order is exactly some of the things that I pointed out here. Why, based on his observation of the witness, his reading of the evidence and viewing the evidence that was submitted at the suppression hearing, why the district court felt that Dr. Parrish's testimony did not provide the basis for suppressing, because it did not provide a basis to say that, based on the district court's findings, that defendant did not knowingly waive. Again, he took into account all the evidence that was presented, certainly, which was a handwritten statement that showed that the defendant had the ability to write, put thoughts down, and create a written document. He graduated from high school. I do think that the ten factors that the court used when discussing the voluntariness go towards knowing. Many of them go towards knowing, too. A few of them do, yes. Let me ask you. You made a reference at one point to page 109, and it may have just been an erroneous reference, but as I mentioned, I had something tabbed on that page, too, so I'm curious if you had something to say about that page, whether it was what — and I say 109. As I'm using it, it's like 131 is their transcript page number. If that was just an erroneous number reference, that's fine. But if you did have something on that page, I'm curious as to what it was. This is where he read from. Yeah, he just read from that. Here's what I'm going to read. I actually was referencing transcript page 109, Your Honor, and I appreciate it. It's actually SCR number 165, which is in the bottom right-hand corner.  It was, again, the witness in the court addressing the right to remain silent. And the witness is Dr. Parrish, and she indicates in response to a question, and I'll quote from that page, the top of the page, page one. It says, When he asked about the right to remain silent, he said to be quiet when being questioned. When they're asking questions, be calm, don't say anything, can't say nothing. It remains, it says remain silent, because if you keep talking, they might add more things on top, like charges you with harassment or using exclusive words like cussing. That's Dr. Parrish discussing what the defendant said when she was asking him in an interview about the right to remain silent. And you can contrast that with the Aikens case, where the defendant in that case was specifically asked what the right to remain silent means. And that defendant said, well, don't say anything until you're spoken to, which is directly contrary to what the right to remain silent is. But this defendant, even according to their expert witness, got it right. Well, no, not according to their expert witness. Her conclusion is he didn't understand. Well, I would agree that's her conclusion, Judge, but I believe her conclusion is contrary to the evidence and the facts that she even presented during the suppression hearing. Is it your understanding that not understand in this dialogue that you've just brought to us might be different than susceptibility that's mentioned by the judge in that particular paragraph? Because he talks about the suppression hearing, the testimony of Parrish, and her written report, and her opinion with respect to susceptibility. Now, having that in his mind, he says the court finds that Dr. Parrish's testimony does not provide the basis for suppressing the defendant's voluntary statements. Even if you say, here's voluntary, and now I'm looking at her testimony with regard to whatever, knowing, but he talks of susceptibility. Do you think susceptibility, as you've been arguing, understanding to us and this statement are the same thing? I actually think that susceptibility and the issue of susceptibility to suggestion in this case was not the same issue as the knowing waiver. So we're still, if it's susceptibility, it's back to the voluntariness because the police officer says, did you push him in the fire? Yes. That's susceptibility, right? Correct. So we still, even if we take Judge Carroll's last paragraph there, we still can't find any words that would clue him in to what he thought about all these statements made by Parrish, except that he rejects them. I think that's the last statement talking about voluntary. I think that's exactly right. Unfortunately, the order isn't clear as to the distinction between the two, but I do believe susceptibility to suggestion goes towards voluntariness or the validity of his confession as opposed to his understanding. Right. In a different way. It seems to me, and this relates to 109 as well, it seems to me the argument being made to him to support suppression builds one on the other. I mean, the point being made by Dr. Parrish is if he didn't understand the rights, then he couldn't have understood what it meant to give them up. And if I take that backwards, it suggests to me Judge Carroll addressed what he addressed because that seemed to be the culmination of what Dr. Parrish was leading up to, that his susceptibility, he didn't do this voluntarily, he didn't understand as a component part of that. I think that's right. I think Dr. Parrish's entire testimony to support suppression did build on itself. And taken as a whole, it was her opinion that he didn't understand and it wasn't voluntary. But, yes, Judge Carroll, if you do, or the district court, if you do take it backwards, I would agree took it all, the entirety of the testimony from Dr. Parrish, into account and found that it just wasn't enough, that the defendant actually did, the defendant's statement actually was voluntarily made and he did not, or he did knowingly waive his rights. I'm looking at the briefing to the district judge on the suppression hearing and I can see why the district judge did as he did because in the defendant's brief, he has as point number two, I'm at the bottom of page 34 of volume one of SCR. In the defendant's brief, if Miranda warnings were required, was the advisement of right given to the defendant adequate under the circumstances? And under this heading, the defendant talks about knowing. Then on three, whether the defendant's submissions were voluntarily made. And then he talks about voluntary. Well, your responsive brief says, and I'm now on page 54 of SCR, under heading two, was defendant's waiver of rights knowing and voluntary. Now, you've got both steps. And you first cite Moran v. Burbine, which you don't then quote the language, which makes it very clear that there are two steps to the test. And then you move and you simply quote from Hazlitt, our circuit case, which only talks about voluntary. So I think the district judge thought, you know, the only thing seriously at issue here is voluntary because while the knowing is in there in both, the heading under which he was analyzing was heading number three in the defendant's brief. And while you cite Moran v. Burbine that has the two legs, you don't lay them out there, I just don't think he was focused. I think that the briefs, I think you accurately summarized the briefs. I think the evidence that came in at the suppression hearing, though, did cover both. I understand that, too. He may not have to, if we send it back, and I'm not sure we will, I'm not sure he even needs to hold a new hearing. I would think. If he does, maybe he doesn't. I guess that would be up to him. I would, again, obviously submit to this Court that it shouldn't be sent back. But if it did, I would suggest that a hearing wouldn't be needed, that the evidence has been fully. That would be up to the district judge. I see I have a minute left. If you'd like me to move on to the other issues, I would. If there's any other questions on voluntariness, I'd be happy to try and answer them. I've always been fine on voluntariness. Voluntariness in the knowing way. Judge, without taking up a lot of time, I think the other main issue in this brief is the limitation of Dr. Parrish's trial testimony as to the suggestibility of her opinion as to the suggestibility of the defendant. And I don't think it needs a detailed analysis at this point. Stop right there. You said a key word. It seems as though she testified about susceptibility of persons to be susceptible to suggestion. But then the judge says, no, you can't go to the next step and say, and the defendant is one of these. Am I right? Is that what the testimony of trial was? Right. The testimony of trial, which I try to lay out in our brief, actually. I'm taking it from your brief. That's what you're arguing. Exactly. Dr. Parrish testified to all the mental and general characteristics of Mr. Belvedere, then said at trial that these characteristics that he displays, exactly what he displays in other people, those people that have those characteristics similarly situated show these type of susceptibility to authority. They're going to basically, these are my words, go along to get along with who they view as authority. And she laid all that out and said people just like him, that's what they do. That allowed the defense to argue and present their defense that, hey, look at what Mr. Belvedere is like. Listen to the tape. He just went along with what agent said, and therefore the confession was false. The only thing that Parrish didn't say is, and by the way, the defendant fits right in that category, and he's one of them. Exactly. And I think that minor limitation by the district court was well within his discretion under the rules. Thank you. Thank you. Rebuttal. Just briefly, I'd like to point out what I failed to do in opening, and that was that regardless of whether or not the preclusion was appropriate to start with by the district court, after the government opened the door to the defendant, the defendant's testimony should have been admitted and was error. The government specifically asked repeated questions about whether this defendant could lie, whether his confession, if he made statements, they were truthful. He repeatedly asked that. So then when the defense tried to say, hey, judge, he went past the ruling, I need to be able to introduce my evidence now on that specific issue, and the judge even condemned what the government did and said, hey, you were treading on bad ground here. They didn't even touch a glove to this stuff, and you went into it, and then it still refused to allow them to bring in the evidence. So that made it even more clear error in that case. I'd also like to point out that I believe, although it is listed under an inappropriate heading, perhaps, in the motion to suppress, I do believe it was properly raised. They cited Moran v. Burbine, which is the applicable test. So I believe it was properly raised, and I think the district court was just so focused on getting the analysis right under the case it had been reversed in in Haswood that it just simply failed to conduct the appropriate analysis for the Miranda waiver rights. Haswood was the district court's own case. It was. Judge Carroll's case. Yes, sir. So he was alerted to that issue. And I would also, if I have the time, I'm out of time, I guess, so thank you. Thank you both for helpful arguments. The case of United States v. Belvato is submitted for decision. The last case on the argument calendar is Collier v. McDaniel.
judges: Brunetti, Fletcher, Clifton